Today's cases will be called as previously announced, and the times will be as allotted to counsel. The first case today is No. 152377, United States v. Giovanni Aybar-Ulloa. Ms. Clark, good morning. Good morning, Your Honor. Heather Clark on behalf of Appellant Giovanni Aybar. If I could reserve five minutes for rebuttal, I would appreciate that. You may. Thank you. So I think the most helpful way to address this is to answer the Court's questions that were answered by order, and so I'll try and go in the same order as those in order to be helpful to the Court. So I think the starting point here is to define universal jurisdiction, which under Sosa v. Alvarez-Machin has both a substantive component and a procedural component. If you look to the law that we have on piracy v. felonies, and certainly there's a lot less law in terms of interpreting the felonies clause of Article I, we're able to identify the difference between a national consensus on the substantive component and the procedural component. And looking to, I think, the conventions which were cited in the dissent in Cardella-Luna, I think that's a starting point. If you look at the Convention on the High Seas that prohibits piracy and slavery but not drug trafficking, that's not addressed at all. When you look at the United Nations Convention on the Law of the Sea, it suggests for cooperation to suppress drug trafficking but does not require criminalization and does not grant any sort of jurisdiction to the signatory parties, of which the United States is not a signatory. And then the third convention, I don't know, is the United Nations Convention against the Illicit Traffic of Narcotics and Psychotropic Substances, which again suggests cooperation and delineates it that it should be in conformity with the international law of the sea, not that it be anything different. So when you take these three components together, there is no universal recognition of drug trafficking as a substantive offense. If you look to the bilateral or regional agreements which are referenced in that last convention as an encouragement for enforcement, you have nothing different than what we have from Mr. Kantarovich's article in the Army, article in Horizon. If you update that, you still have bilateral and regional agreements which make consent by the non-boarding party, the originating party of the vessel. Consent is possible for jurisdiction, but it's not mandated. So if you look to, and again, the resource cited in the Cardinal's Luna Dissent, the International Narcotics Control Strategy Report, the most updated version, and you look to the Dominican Republic, which is one of the two nationalities at issue here of the citizens of the boat, you have, for the Dominican Republic, the Caribbean Regional Maritime Agreement, which provides for jurisdiction within the country of the citizens themselves. It does not provide for, other than by consent, for jurisdiction within the boarding country's state. Let me just jump in because this is what I find puzzling. So if the clause only covered offenses, the power to define and punish offenses against the law of nations, then everything you just said, I would understand, would be very helpful to you because what you're showing is, under any of the plausible international law materials, this activity is not itself an offense against the law of nations. Okay, and then additionally I take you to be arguing that the offense at issue here is not plausibly described as piracy. Correct. Okay, but the difficulty is that the clause isn't limited to defining and punishing piracy and offenses against the law of nations. It also allows the punishment of felonies on the high seas. So what are we supposed to do about that? Because the mere fact that something is not an offense against the law of nations doesn't tell me that it can't be a felony on the high seas. That's a fair point. Okay, so what's the answer to that part of the problem? So the way the law has developed, there are three distinct, as Your Honor is saying, three distinct means for Congress to legislate. I think the literature in the case law really suggests that piracy is the only that has universal jurisdiction. The distinction of universal jurisdiction is important because with universal jurisdiction, the U.S. does not have to have a nexus to the conduct in order to bring that conduct into the United States. Absent that universal jurisdiction, there must be a nexus between the conduct and the United States for it to be prosecuted here. Is that true even for a stateless vessel? So when you get to stateless vessel, which is a different question, we have two different definitions. It's the same question, I think. I take it as a bit of a break out of a question then in trying to go through logically. When you look at stateless vessel, I think it's important to note that there are two different definitions. There's the definition under the MDLA, which is broader than international law, and then there's the definition under international law. What's the definition coming from under international law? So if you look at Rosero, I think is a fair example, international law only requires that the vessel be without authority by another nationality. It's not as under the MDLA that it's not flying a flag. That in and of itself does not meet the definition under international law. Under the MDLA, there's provision that the home country could say that they do not affirm or they could deny authority even though that vessel did have authority at the time it left and at the time it was sailing. So there are these additional components under the MDLA that are not contained within international law. And so if you take that and break it out... I see. So just so I get the argument, you're not saying it has to be an offense under international law in order to be punished, or are you saying it has to be an offense under international law? When you say universal jurisdiction, what do you mean by that? So the universal jurisdiction, I think, is the... I'm sorry, before you answer that question, can you go back to the first one? The first question that Judge Barron asked. The last sequence of questions. What was the first one? I'm happy to go through it. Is it a state vessel that you're looking for a definition of again? Are you saying it has to be a violation of international law in order to be an offense under the felonies clause? That was where we started. I guess for me, are you saying it has to be a crime under international law in order for it to be an offense under the felonies clause? So I think the answer is no. I think that's why the breakout of universal jurisdiction is the important piece, because when you have, if it is, if it is both substantive and procedurally identified under international law and agreed to among the nations, then you have universal jurisdiction. Universal jurisdiction then does not require any nexus with... When you say substantively, do you mean... Is that the criminal offense part of international law? So you just said it has to be both substantively and procedurally. For universal jurisdiction... But that means it has to be a crime under international law. Yes. But then that means the felonies clause isn't doing any work, because if it's a crime under international law, it would be an offense against the law of nations. That's the problem I have. I think the distinction, and certainly I'm not the preeminent scholar on any of this, but I think the distinction in the felonies clause is that if there is a nexus to the United States, if there's... But that means it doesn't have to be an offense against the law of nations. Correct. It could be a domestic offense. And then what is the limit you're asking for? You're saying, because you have universal jurisdiction, I don't know what you mean by that term. What do you mean? Do you mean that it's something that... It doesn't have to be a crime under international law, but then what do we look to for international law to give us a sense of whether there's a problem or not? So there are four cases that address the idea of sort of stateless vessels, and they're all in terms of piracy. You have Palmer, Klintec, Furlong, and Holmes. But we know that the felonies clause is not limited to piracy. Again, perhaps I am in the wrong here, but my understanding of sort of reading through the literature and the case law, the distinction is universal jurisdiction attaches to those specific offenses that apply under international law regardless of the nexus to the United States. If there is no nexus to the United States... That's true. See, the point is that's true. An offense against the law of nations that's universal, a just code of crime, piracy, there doesn't have to be a nexus. It's an offense against all nations. Piracy covers that. And an offense against the law of nations that's of that type also covers it. But there's a provision in Article I that refers to felonies on the high seas, which, as you acknowledge under the case law, does not have to be piracy and does not have to be an offense against the law of nations. So with respect to that, it seems like Congress has the power to define and punish an offense of its own making on the high seas, and I'm trying to figure out if there's a limit on that power. What is the limit you're suggesting exists? That there has to be a nexus to the United States. Okay, and where does that come from, that idea there has to be a nexus? That comes from Congress's authority under the Constitution. If it's not universal jurisdiction, universal jurisdiction defines the right provided. Is that in Article I? Is that a due process limit? No, due process is different. So you're saying inherent in Article I is a requirement that anything under Article I has to be something that has a nexus to the United States, even though it's not in the text? I think I realize my time is up on this point, but if I could respond. If you go through the case law, I cited Chivin from the First Circuit as an example again, but if you go through the case law and you look at how we get jurisdiction under these types of cases, you have to have either universal jurisdiction or a nexus. It's one or the other, and if you don't have universal jurisdiction, which you do not have for drug trafficking, you have to have a nexus. Without that nexus, we don't have authority. One last question. With respect to protective jurisdiction, can that establish the boundaries for figuring out what the nexus would be so that we can say that Congress has made findings about the concern the United States has in stateless vessels being used for purposes of drug trafficking, given the likelihood that that might redound to the detriment of the U.S.? Is that enough? And if it's not enough, why isn't it? So I think it's not enough. And honestly, I haven't thought through fully this one, so I apologize if my answer is not completely coherent. But I think that if you take away too much from the concept of international law, if you're saying that we can criminalize something and bring a foreign citizen into our state, into our country, without having something that's required of international law. And again, I'm sorry, this sounds very convoluted saying it, but it is. I apologize. Can you give us a more straightforward answer? So I think I'm trying not to be confusing by just jumping back to universal jurisdiction, but I think when we're looking at the concept of universal jurisdiction that there has to be this sort of broad agreement. It would be very difficult for us to consider if a foreign country took one of our citizens because under their own laws they had something that was criminalized. And we had no just because they claimed some nexus without some greater purpose, some greater international purpose. I know you have a lot of time, but this is a big issue. In the D.C. Circuit case that dealt with this issue, the way they handled the nexus issue was they said in that case the defendant had admitted he was headed to the United States. Right? Right. Now that's not an international law point. He was just as foreign a citizen for international law purposes, whether he was headed to the U.S. or not. That's under the protective theory, isn't it? Because there is a nexus there that says that the state of the United States is protecting itself because he is headed for the United States. So the, and I apologize, I apparently have not brushed up long enough on the protective component. But the, I guess factually what I would say as to our case is there is no indication, there's no evidence whatsoever that these individuals were headed to the United States. They were heading from Venezuela to the Dominican Republic. And I would say that that's a very important distinction. And if I, I guess I'll reserve the rest for rebuttal and perhaps have an opportunity to skim back through the D.C. case while counsel is arguing. And perhaps I can have a better response for your honors. Thanks. Thank you. Good morning. Good morning. May it please the court. Margaret Upshaw for the United States. Please speak up. Oh, yes. Is this better? Yes. Thank you. Okay. I'll try. So a felon admitted in his guilty plea that he was on board a stateless vessel on the high seas when he was apprehended for drug trafficking. A felon makes no argument in the briefing as to why stateless vessels are beyond Congress's authority under the felonies on the high seas clause. I thought the argument was the one they just made, which is that anything that lacks, that is not a universal jurisdiction crime and lacks a nexus to the United States, if the offense lacks a nexus, doesn't matter if it's stateless vessel or not, can't be punished under this clause of Article I. I think that argument runs contrary to the view of stateless vessels that has been expressed throughout case law in that stateless vessels have been viewed as essentially providing the nexus. This court's own case law, United States v. Smith, United States v. Victoria, states that the United States has authority to treat stateless vessels as if it were their own, as if they were their own. So I think that in the context, the specific context of stateless vessels on the high seas, that is to the extent there is an international jurisdictional hook required under the felonies on the high seas clause, the statelessness of the vessel provides that. Can the United States, can Congress pass a law making any crime you want to talk about a crime by two foreign nationals in foreign territory that is not headed for the United States? No, no, that would be a circumstance outside of the high seas clause that the circumstance your honor is positing. That's just not presented here and so I think that would pose an entirely different situation. Would they have authority to do that? No, I don't think the government is prepared to take a position on whether that would be permissible. It implicates an entirely different inquiry and a complex one that I think would warrant separate consideration. Here we really have a situation where there's no dispute that the vessel was stateless. There's no indication in the record that appellant or anyone else on the vessel made a claim of nationality. Can you just help me understand the, what's the significance for Article I purposes of the fact that it's stateless? If I read Article I, it sounds like you're not saying this is piracy and you're not saying this is an offense against the law of nations. You're saying it's a felony on the high seas. The phrase felony on the high seas doesn't mention statelessness, it doesn't mention U.S., it doesn't mention anything. So one possibility is any felony of any kind on the high seas would be fine. You're, I think, understandably not saying you need us to accept that scope of your power order for you to win. So you're suggesting somehow it matters that it's stateless. And I'm trying to figure out how, for purposes of the felonies on the high seas clause, does that matter since the word stateless isn't in there? Certainly. So I think that the government is not asking the court to take a position on whether, in fact, you need that type of, for example, some type of universal jurisdiction, whether it comes through statelessness or through the gravity of the offense. So we don't think the court needs to resolve that question in this case. That's an important and a complex question that will arrive in other cases. But the reason you're saying we don't have to decide that is because you're saying the facts here allow it to be satisfied, even if we assume it. That's exactly right, yes. So what am I assuming? I mean, there's facts. There's statelessness of a type that's admitted here. What international law principle, assuming some international law principle is implicitly a limitation on the scope of the felonies on the high seas clause, what international law principle is it that statelessness of this type is relevant to in the U.S.'s view? Right. I think that it would be relevant to a type of prescriptive jurisdiction. So the question would be whether the United States has some type of prescriptive jurisdiction in international law to assert its authority over stateless vessels. What do I look to? What source of international law regarding protective jurisdiction do you think is most supportive of the idea that the U.S. has protective jurisdiction over a stateless vessel engaged in drug trafficking, statelessness being defined as the MDLA defines it in this case? Right, right. Well, first I want to point the court to United States v. Victoria, which is one of this court's decisions holding as a matter of international law that the United States has authority over stateless vessels. So that, I think, provides an analysis of it. That's a principle that was adopted by many of the circuits. The 11th Circuit's decision in Marino-Garcia also lays out why stateless vessels have that special status. And the basic concept is that by failing to fly a flag, you know, in a metaphorical sense, by failing to submit themselves to the jurisdiction of a single nation, they forfeit the protection of any nation's protection. And they're subject to the jurisdiction of all nations. That's a principle that's been reiterated in treatises and, I think, in this court's case law, other circuit case law. It's not inconsistent with anything in the treaties that are cited and the conventions that have been cited. For example? Those treaties allow you to stop a vessel to check the papers. Do any of those treaties say that you can apply your municipal law to those vessels? So I think the most helpful kind of thing is... Can you just answer that, the way those treaties allow you that? I think the treaty that gets closest to addressing directly that scenario would be the Caribbean Regional Maritime Agreement. It tells you to help out, but doesn't tell you that you can apply your own municipal law. Well, the Caribbean Regional Maritime Agreement has a provision in Article 23 that provides that the party states should take steps to establish their jurisdiction over drug trafficking offenses committed on stateless vessels on the high seas. So I think that speaks pretty clearly to the fact that the conduct here that the United States took part in was within the bounds of international law and the special status of stateless vessels that has been long recognized. But those treaties can't go against the authority of Congress under Article 1, can they? The government's not arguing that those treaties are the basis for the Congress's authority under Article 1. In this context, we haven't advanced that argument in the brief or fully explored it. I do think they're illustrative for purposes of this case just to show that this exercise of jurisdiction was consistent with international law. That's also consistent with what this Court has already held. Can you just remind me, what's the context in which we describe protective jurisdiction in Victoria? Just to be clear, it was jurisdiction over stateless vessels, not necessarily in the protective principle realm, but the prescriptive jurisdiction. Prescriptive, explain to me prescriptive as opposed to protective. Yeah, and isn't Cardales about protective jurisdiction? And I had the same question. What are the differences between the two word uses? Certainly. So for prescriptive jurisdiction, I was just referring to any source in international law that would provide authority over extraterritorial authority. So it could be universal jurisdiction, protective. The protective principle is a separate element. So you're arguing that both, under our case law, support the exercise of jurisdiction and meet the definitional requirement of high felony here? Right, so the Court has mentioned in Cardales that the MDLEA could be supported under the protective principle. We think whether or not that's a stand-alone sufficient isn't implicated here because of the statelessness of the vessel. And I do want to get to your question. In United States v. Victoria, that was a circumstance applying either the MDLEA or the predecessor version. The predecessor? Yes, okay. Where at that time, the defendant could raise a stand-alone challenge that the exercise of jurisdiction was inconsistent with international law. So that was directly presented to the Court at that time. That's now been removed from international jurisdiction. And you're saying that Victoria matters here because you are saying then that, and I understand why you might say it, felonies on the high seas covers essentially anything Congress wants to define as a felony. And they've defined this as a felony. And then to the extent that there's some international law limit on that, the limit can't be greater or more restrictive than what we said in Victoria would be the kind of thing that would permit jurisdiction to be exercised over a foreign national on a stateless vessel. Correct, yeah. I think that that just provides the source to the extent the Court thinks it's necessary. That's consistent with the viewpoint articulated in Cardales-Luna. This is a narrow circumstance. And it happens to be a set of facts where there's really no dispute about the statelessness of the vessel. It's been admitted in the guilty plea, and there's just nothing in the record to indicate that this was outside the core realm of statelessness. So on those facts, I think that it's pretty easy to affirm the convictions and the constitutionality of the statute as applied to this case, which is the only challenge appellant is raising here. Do you know, just in the research you've done preparing for this case, what is the limit, if there is any? What was meant by the phrase felony on the high seas? With regard to felony? Yeah. So I think that it's not particularly clear or hasn't been discussed at length in the case law or in the commentary. It's a complicated question. But I think it's possible that felony connotes some threshold level of seriousness. Here, of course, there's no dispute that drug trafficking, I think, qualifies. It's condemned universally abroad. It's condemned domestically. However, every time that the United States has attempted to have other countries join it in applying universal jurisdiction to drug trafficking, it has been rejected by the international law. Well, I'm not sure that's true. Am I right? I don't think I'm sufficiently familiar with the facts to answer that. I'm sorry. But I do think that that's not necessarily how we would define felonies and the felonies on the high seas clause. But regardless, I don't think that, you know, no circuit has concluded that drug trafficking isn't sufficiently serious to rise to the level of felony. Is it your point that the felonies clause can exercise universal jurisdiction broader than other international law? No, we are taking a position on whether international law, in fact, binds or limits the felonies clause in any way. Because I don't think we need to decide or to take a position on that in this case. I don't think the court needs to decide that in this case. But that's based on, you say that the international law limit that you're respecting, even bracketing whether you have to respect it, that is being respected is the international law limit we articulated in Victoria, which binds us about the scope of protective jurisdiction. About the scope of jurisdiction over stateless vessels. Okay. Yes. And I don't recall whether Victoria relied on the protective principle that was articulated in Cardales. And I think that it's another principle that would be relevant here where we also have a stateless vessel. Those are powerful principles together to suggest that the exercise of authority in this particular case was permissible. Can I just ask, do you know historically whether smuggling was prosecuted on the high seas? Drug smuggling? Smuggling. Smuggling. I don't know generally smuggling. I know that in the first- Because that's just what this seems most like. It's like some sort of contraband that's being smuggled. It's not a depredation. It's not robbery. It's not attacking anybody else. The closest analog I can think of or that I'm aware of is that it was a crime on the high seas to conceal a pirate or a robber, essentially a fugitive, on a vessel. And that was in the 1790 Act passed by the press conference. That's why I'm asking the question because that's what worries me slightly, which is you could imagine they wanted to go after piracies because piracy was a universally condemned offense. And then those felonies that would be like aids to piracy. So I harbored a pirate. I'm not myself a pirate. But you could also punish that. It's just a bit of a step to now say, you know, well, anything that Congress defines as a felony also. So I realize you could say, well, now it's got to be something serious. Sure, sure. The defendant doesn't, as far as I can tell, make any argument that this is not a felony. His argument is just the jurisdictional point. So I take that. I don't think he does. And the same act also included manslaughter as one of the offenses. What about impressing American citizens into your Navy when they've offered proof of American citizenship? Is there any history on whether that was considered a felony under this clause? I'm not familiar with that, but there may well be. And I'm not familiar with it, unfortunately. But I do think that here there's just no question that drug trafficking would qualify and does qualify. And that has to be watched. Why have they rejected it every time they bring it up as being a crime? In the international community? Yes. Well, I think that the regime of treaties and bilateral agreements does suggest that the international community is concerned about monitoring this kind of conduct. I'm not concerned. I'm saying they rejected universal jurisdiction for drug trafficking. And every time it has been brought up, there isn't a single, other than bilateral treaties, which is a different story, there isn't a single international treaty or covenant in which universal jurisdiction is attached to drug trafficking, even though it has been tried at least on three occasions. I think in the context of stateless vessels, that question is just more easily resolved. And so to the extent that is the case outside of that context, that might raise more complicated questions that the court just doesn't have to resolve here. And I'm sure the court will have an opportunity to consider those in the future. But I think here the court can affirm the convictions below without problem. If the court has no further questions. You have 38 more seconds. Do you want to reserve them in case you're caught by surprise? I will very briefly touch on the sentencing issue. I recognize that the court has held that Amendment 794 is retroactive and clarifying. I do think that Appellate makes no argument as to why Amendment 794 would change the analysis in this case and doesn't suggest that there's new evidence or new facts that would change the result or the denial of the mitigating rule adjustment. I don't think there's any indication that the Judicial Court clearly erred in denying that rule adjustment. So I would also ask the court to affirm the sentence in this case. And I will sit there. Thank you very much. Thank you. Ms. Clark? Yes, Your Honor. So in responding to a few points, the definition of felony, if you go through Contorovich's law review article on Define and Punish Clause, he goes through in great detail the history of piracy and felonies and how those definitions came about. And without going into great detail, I would refer the court to that in coming to the conclusion that there was no very specific definition of felony that had been applied at that time. When you look at the facts here in talking about the stateless vessel, I think there is a distinction, as I had made before and I want to clarify, between stateless vessel under the MDLA and stateless vessel under international law. And the record here doesn't establish that it's international law as opposed to the MDLA. What do we do about our case in Victoria that she's relying on? Because she says in Victoria we held that although international law did not make it an offense, so it's not a crime under international law over which there's universal jurisdiction, she said in Victoria we've committed ourselves to the proposition that international law permits the assertion of jurisdiction over a foreign national on a stateless vessel engaged in this kind of conduct. And if that's the case, given that the felonies clause is broader than piracy and offense against the law of nations, why isn't that enough to say if there's an international law limit on the felonies clause, Victoria says, well, we're within that limit. I don't think it was, and I don't remember factually, specifically the issues in Victoria, but my recollection is that the distinction was not at issue in Victoria. I think the conduct fell within the international law component regardless, and I'd have to go back to Victoria to tease that out specifically, but that's my general recollection. No, I think it was the holding in the case. Assume with me it's the holding. Do you agree, then, that you have the rules unless we do an en banc? No, I think that case didn't address the distinction between statelessness under the MDLA and the analysis of what those three components are as opposed to... ...that it was a stateless vessel. If he had wanted to reserve at that point, perhaps he could have, but he did not. Well, if you go through the change of plea hearing, and I'm glad you bring that up, his attorney steps in at that point and says explicitly we are only agreeing to this in terms of jurisdiction as the court has denied our motion to dismiss on the jurisdictional ground, and it leaves the impression that the jurisdiction is under the MDLA as opposed to MDLA. So you're saying what he pled guilty to is fact-sufficient to establish MDLA jurisdiction, but the constitutional question of whether that was constitutional under Article I, he didn't concede. I don't think he concedes that through his guilty plea, and I think that they all agree. Your liking is a jurisdictional one, right? No, it's under the Constitution. Well, it's a constitutional jurisdictional question as opposed to a statutory jurisdictional question. Correct. You're saying he conceded the statutory jurisdiction question, but not the constitutional. Correct. Thank you for saying that more articulately than I have. In terms of smuggling, that was not, at the time when the piracy and felonies clause was enacted, that was not part of anything considered to be universal jurisdiction. If you go through the case log, particularly those four pieces I identified, Palmer down to Holmes, it talks of piracy and robbery. It does not talk of smuggling. Smuggling is not something that was considered. And then even if you look to SOSA, I believe it was SOSA, SOSA or Smith, it identifies four possible universal jurisdiction components, and smuggling does not fit within any of those four. I do believe it was Smith. I apologize. And then in terms of murder as well, if you go through that series of four cases, the fourth case, or the third case that was forewarned, pulls murder out of that and says, no, murder does not have universal jurisdiction. So I think it's very important that we have to be careful here. It doesn't hold that murder couldn't be a felony on the high seas. It held that statutorily it was not meant to be as applied to a foreign citizen, but there's no statement in Furlong that suggests that murder could not be defined as a felony on the high seas, say, if it was committed by an American citizen. So you're correct. So that just takes us back to the jurisdictional point, which takes us back to Victoria and what we make of that. And I do think, I hope it's helpful. I tried to go through the question in sort of the order that it asks. I do think going through that in that order of the analysis kind of leads itself in my position to concluding that this does not apply as applied here. And then in terms of, I would just say on the sentencing issue, Mr. Ivar certainly does contest and has contested factually that the minor role participant does apply to him and that there was error by the court below. And maybe that's true of that as well. Thank you. Thank you, Your Honor.